Jack Garyth Poulson
Alaska Bar No. 8711104
**POULSON LAW LLC**
636 Harris Street
Juneau, Alaska 99801
Tel: (907) 586-6529
jack@poulson.law

Richard J. (Rex) Burch*
Texas State Bar No. 24001807
**BRUCKNER BURCH PLLC**
11 Greenway Plaza, Suite 3025
Houston, Texas 77046
Tel: (713) 877-8788
rburch@brucknerburch.com

Michael A. Josephson*
Texas State Bar No. 24014780
Andrew W. Dunlap*
Texas State Bar No. 24078444
**JOSEPHSON DUNLAP LLP**
11 Greenway Plaza, Suite 3050
Houston, Texas 77046
Tel: (713) 352-1100; Fax: (713) 352-3300
mjosephson@mybackwages.com
adunlap@mybackwages.com

*Pro hac vice applications forthcoming*

*Attorneys for Bybee and the Hourly Employees*

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ALASKA AT ANCHORAGE

| | |
|---|---|
| CASEY BYBEE, Individually and for Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> NORTHERN STAR (POGO) LLC, <br><br> Defendant. | Jury Trial Demanded <br><br> Rule 23 Class Action <br> FLSA Collective Action <br><br><br><br> **Case No. _____** |

## CLASS AND COLLECTIVE ACTION COMPLAINT

### SUMMARY

1.     Casey Bybee (Bybee) brings this class and collective action to recover unpaid wages and other damages from Northern Star (Pogo) LLC (Northern Star).

Bybee v. Northern Star (Pogo) LLC
Complaint

2. Northern Star employed Bybee as one of its Hourly Employees (defined below).

3. Northern Star paid Bybee and the other Hourly Employees by the hour.

4. Bybee and the other Hourly Employees regularly work more than 8 hours a day and 40 hours a week.

5. But Northern Star does not pay Bybee and the other Hourly Employees for all their hours worked, including overtime hours.

6. Rather, Northern Star requires Bybee and the other Hourly Employees to prepare and put on protective clothing and safety gear fundamentally necessary to perform their jobs, "off the clock," while on Northern Star's premises.

7. Likewise, Northern Star requires Bybee and the other Hourly Employees to change out of and store their safety gear and protective clothing, "off the clock," while on Northern Star's premises.(¶¶ 6-7 together, Northern Star's "pre/post shift off the clock policy").

8. But Northern Star does not pay Bybee and other Hourly Employees for this time spent donning and doffing their safety gear and protective clothing, "off the clock," before and after their shifts.

9. Additionally, Northern Star does not pay Bybee and the other Hourly Employees at least 1.5 times their regular rates of pay—based on all remuneration—for the hours they work in excess of 8 a day and 40 a week.

10. Instead, Northern Star pays Bybee and the other Hourly Employees non-discretionary bonuses, including safety and quality bonuses, stock bonuses, and performance

Bybee v. Northern Star (Pogo) LLC
Complaint

bonuses, that Northern Star fails to include in their regular rates of pay for overtime purposes (Northern Star's "bonus pay scheme").

11.     Northern Star's pre/post shift off the clock policy and bonus pay scheme violate the Fair Labor Standards Act (FLSA) and the Alaska Wage and Hour Act (AWHA) by failing to compensate Bybee and the other Hourly Employees at 1.5 times their regular rates of pay—based on all remuneration—for all hours worked in excess of 8 in a day and/or 40 in a week.

## JURISDICTION & VENUE

12.     This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this case involves a federal question under the FLSA. 29 U.S.C. § 216(b).

13.     This Court has supplemental jurisdiction over the state law claims because they arise from a common nucleus of operative facts. 28 U.S.C. § 1367.

14.     This Court has general personal jurisdiction over Northern Star because Northern Star is an Alaska limited liability company.

15.     Venue is proper because Northern Star maintains its principal place of business in Fairbanks, Alaksa, which is in this District. 28 U.S.C. § 1391(b)(1).

## PARTIES

16.     Northern Star employed Bybee as a Bull Gang Miner Tech 3 from approximately May 2024 to March 2025.

17.     Throughout his employment, Northern Star subjected Bybee to its pre/post shift off the clock policy and bonus pay scheme.

18.     Byebee's written consent is attached as **Exhibit 1**.

Bybee v. Northern Star (Pogo) LLC
Complaint

19.     Bybee brings this class and collective action on behalf of himself and similarly situated employees Northern Star imposed its pre/post shift off the clock policy on and/or paid under its bonus pay scheme.

20.     The FLSA collective of similarly situated employees is defined as:

> **All hourly Northern Star employees who worked during the last three years through final resolution of this action (the "FLSA Collective Members").**

21.     The Alaska class of similarly situated employees is defined as:

> **All hourly Northern Star employees who worked in Alaska, during the last two years through final resolution of this action (the "Alaska Class Members").**

22.     The FLSA Collective Members and the Alaska Class members are collectively referred to as the "Hourly Employees."

23.     Northern Star is an Alaska limited liability company with its principal place of business in Fairbanks, Alaska.

24.     Northern Star may be served with process through its registered agent: **Andrea Canfield, 510 L St., Ste. 500, Anchorage, Alaska 99501**, or wherever she may be found.

## FLSA COVERAGE

25.     At all relevant times, Northern Star was an "employer" within the meaning of the FLSA. 29 U.S.C. § 203(d).

26.     At all relevant times, Northern Star was an "enterprise" within the meaning of the FLSA. 29 U.S.C. § 203(r).

27.     At all relevant times, Northern Star was an "enterprise engaged in commerce or in the production of goods for commerce" within the meaning of the FLSA because it had

Bybee v. Northern Star (Pogo) LLC
Complaint

employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials—such as tools, computers, and personal protective equipment—that have been moved in or produced for commerce. 29 U.S.C. § 203(s)(1).

28.    At all relevant times, Northern Star had an annual gross volume of sales made or business done of not less than $1,000,000 each year.

29.    At all relevant times, Bybee and the other Hourly Employees were Northern Star's "employees" within the meaning of the FLSA. 29 U.S.C. § 203(e).

30.    At all relevant times, Bybee and the other Hourly Employees were engaged in commerce or in the production of goods for commerce.

## FACTS

31.    Northern Star bills itself as a "global-scale gold producer with three production centres, operating in world class locations of Western Australia and Alaska."[1]

32.    Northern Star employs more than 690 employees southeast of Fairbanks, Alaska.[2]

33.    To meet its business objectives, Northern Star employs workers, including Bybee and the other Hourly Employees, to mine and process precious metals, including gold.

34.    For example, Northern Star employed Bybee as a Bull Gang Miner Tech 3 in its Pogo Mine from approximately May 2024 to March 2025.

---

[1] https://www.nsrltd.com/ (last visited September 29, 2025).
[2] https://www.nsrltd.com/our-assets/pogo-operations/ (last visited September 29, 2025).
Bybee v. Northern Star (Pogo) LLC
Complaint

35. As a Bull Gang Miner Tech 3, Bybee's job duties included repairing pumps and ventilation systems in the mine, installing underground infrastructure, such as air and water discharge lines and power lines, vent doors, fan bulkheads, as well as various other repair and maintenance tasks throughout the underground mine.

36. Bybee's job duties likewise included donning and doffing his safety gear and protective clothing, on Northern Star's premises, before and after his scheduled shifts.

37. Throughout his employment, Northern Star recorded Bybee's "on the clock" hours via the timekeeping system it selected and controlled.

38. Thus, Northern Star's employment records reflect Bybee's recorded, "on the clock" hours.

39. Throughout his employment, Bybee regularly worked more than 8 hours a workday and 40 hours a workweek.

40. Indeed, throughout his employment, Bybee typically worked approximately 12 hours a day "on the clock" and 7 days a workweek (84 hours a workweek) four weeks on and followed by two weeks off.

41. But Northern Star did not pay Bybee for all his hours worked.

42. Instead, Northern Star subjected Bybee to its pre/post shift off the clock policy.

43. Specifically, Northern Star required Bybee to prepare and don protective clothing and safety gear (including hard hat, wisdom head lamp, reflective, high vis clothing, ear plugs, ear muffs, steel toed boots, safety glasses, cut resistant gloves, mining belt, harness, W65 self-contained self-rescuer, GPS tracker, respirator, brass tags) prior to his scheduled shift on Northern Star's premises, all "off the clock," and without compensation.

Bybee v. Northern Star (Pogo) LLC
Complaint

44. This took Bybee approximately an hour each workday.

45. Bybee could not perform his other underground mining job duties in accordance with Northern Star's policies, procedures, and expectations without donning this protective clothing and safety gear.

46. Bybee could not safely perform his other underground mining job duties in accordance with Northern Star's policies, procedures, and expectations without donning this protective clothing and safety gear.

47. Indeed, much of the gear Bybee utilized is mandated by federal regulation. *See* 29 C.F.R. § 1910.132; 30 C.F.R. § 56, *et seq*; 30 C.F.R. § 57, *et seq*.

48. The donning of protective clothing and safety gear were therefore integral and indispensable work duties for Bybee fundamentally intertwined with his other underground mining duties.

49. Likewise, Northern Star required Bybee to remove and store his safety gear and protective clothing and showering each day after the end of his shift, "off the clock" and without compensation.

50. This took Bybee approximately 40 minutes each workday.

51. Bybee could not perform his job duties in accordance with Northern Star's policies, procedures, and expectations without removing and storing this safety gear and protective clothing and showering each workday.

52. Bybee could not safely perform his job duties in accordance with Northern Star's policies, procedures, and expectations without removing this safety gear and protective clothing and showering each day.

Bybee v. Northern Star (Pogo) LLC
Complaint

53.     The removal of safety gear and protective clothing were therefore integral and indispensable work duties for Bybee.

54.     But under its pre/post shift off the clock policy, Northern Star did not compensate him for the same.

55.     Thus, because of its pre/post shift off the clock policy, Northern Star failed to pay Bybee overtime wages for all his overtime hours worked, in violation of the FLSA and AWHA.

56.     Bybee and the other Hourly Employees perform their jobs under Northern Star's supervision and use materials, equipment, and technology Northern Star approves and supplies.

57.     Northern Star requires Bybee and the other Hourly Employees to follow and abide by common work, time, pay, and overtime policies and procedures in the performance of their jobs.

58.     Bybee's and the other Hourly Employees' work must strictly adhere to the uniform quality standards put in place by Northern Star.

59.     At the end of each pay period, Bybee and the other Hourly Employees receive wages from Northern Star that are determined by common systems and methods that Northern Star selects and controls.

60.     Likewise, the other Hourly Employees typically work 4 weeks on and 2 weeks off for approximately 12 hours a day and 7 days a week (84 hours a workweek).

61.     But, just as with Bybee, Northern Star fails to pay the other Hourly Employees for all hours worked.

Bybee v. Northern Star (Pogo) LLC
Complaint

62. Indeed, Northern Star subjects its other Hourly Employees to the same or similar pre/post shift off the clock policy it imposed on Bybee.

63. Specifically, just as with Bybee, Northern Star requires them to dress out in their protective clothing and safety gear (including hard hat, wisdom head lamp, reflective clothing, ear plugs, ear muffs, steel toed boots, safety glasses, cut resistant gloves, mining belt, harness W65 self-contained self-rescuer, GPS tracker, respirator, brass tags) prior to their scheduled shifts, on its premises, "off the clock," and without compensation.

64. And Northern Star requires them to remove and store their safety gear and protective clothing and shower after their shifts, likewise, "off the clock" and without compensation.

65. And like Bybee, much of the gear they must utilize is mandated by federal regulation. *See* 29 C.F.R. § 1910.132; 30 C.F.R. § 56, *et seq*; 30 C.F.R. § 57, *et seq*.

66. But, like Bybee, the other Hourly Employees are forced to perform this compensable work "off the clock" before and/or after their shifts for Northern Star's predominant benefit.

67. Thus, just as with Bybee, Northern Star does not pay the other Hourly Employees for this integral and indispensable work they perform "off the clock" before and after their scheduled shifts.

68. And, just as with Bybee, these job duties take the other Hourly Employees approximately an hour and 40 minutes to complete each workday.

Bybee v. Northern Star (Pogo) LLC
Complaint

69.     Northern Star fails to exercise its duty as the Hourly Employees' employer to ensure they are not performing work "off the clock" that Northern Star does not want performed.

70.     And Northern Star knows, should know, or recklessly disregards whether Bybee and the other Hourly Employees routinely perform work "off the clock," and without compensation, before and after their scheduled shifts.

71.     Thus, Northern Star requires, requests, suffers, or permits Bybee and the other Hourly Employees to work "off the clock," without compensation, before and after their scheduled shifts.

72.     Despite accepting the benefits, Northern Star does not pay Bybee and the other Hourly Employees for the compensable work they perform "off the clock" before and after their scheduled shifts.

73.     Thus, under Northern Star's pre/post shift off the clock policy, Bybee and the other Hourly Employees are denied overtime wages for the compensable work they perform "off the clock" during workdays in which they work more than 8 hours and/or workweeks in which they work more than 40 hours, in violation of the FLSA and AWHA.

74.     And throughout their employment, Northern Star did not pay Bybee and the other Hourly Employees at the required premium overtime rate for all hours worked in excess of 8 in a workday and 40 in a workweek.

75.     Instead, Northern Star pays Bybee and the other Hourly Employees under its bonus pay scheme.

Bybee v. Northern Star (Pogo) LLC
Complaint

76.     Specifically, Northern Star agrees to pay and subsequently pays Bybee and the other Hourly Employees non-discretionary bonuses, including safety and quality bonuses, stock bonuses, and performance bonuses, based on criteria Norther Star sets, that it fails to include in these employees' regular rates of pay.

77.     For example, during the pay period ending January 22, 2025, Northern Star paid Bybee a $648.50 "Perform BON" and a $372.19 "S & Q Bonus."

78.     But Northern Star did not include these bonuses in Bybee's regular rate of pay and thus underpaid Bybee for each overtime hour worked:

| Earnings | rate | hours | this period | year to date |
|---|---|---|---|---|
| Regular | 33.2500 | 40.00 | 1,330.00 | 3,458.00 |
| Overtime | 49.8750 | 30.50 | 1,521.19 | 3,528.66 |
| Perform BON | | | 648.50 | 1,450.57 |
| S & Q Bonus | | | 372.19 | 877.55 |
| VACATION | 33.2500 | 11.50 | 382.38 | 3,441.39 |
| HOLIDAY | | | | 798.00 |
| Sick Pay | | | | 477.97 |
| **Gross Pay** | | | **$4,254.26** | 14,032.14 |

79.     Thus, under Northern Star's bonus pay scheme, it does not pay Bybee and the other Hourly Employees overtime wages at rates of at least 1.5 times their regular rates of pay—based on all remuneration—for all hours worked in excess of 8 in a workday and 40 in a workweek.

80.     And Bybee and the other Hourly Employees complained to supervisors, HR, and/or Northern Star management about their unpaid and underpaid overtime compensation.

81.     Thus, Northern Star uniformly imposes its pre/post shift off the clock policy and bonus pay scheme on Bybee and the other Hourly Employees, in violation of the FLSA and AWHA.

Bybee v. Northern Star (Pogo) LLC
Complaint

## CLASS AND COLLECTIVE ACTION ALLEGATIONS

82.     Bybee brings his claims as a class and collective action under Section 216(b) of the FLSA and FED. R. CIV. P 23 on behalf of himself and the other Hourly Employees.

83.     Like Bybee, the other Hourly Employees are victimized by Northern Star's pre/post shift off the clock policy and/or bonus pay scheme.

84.     Other Hourly Employees worked with Bybee and indicated they were paid in the same manner, performed similar work, and were subject to Northern Star's same or similar pre/post shift off the clock policy and/or bonus pay scheme.

85.     Based on his experience with Northern Star, Bybee is aware Northern Star's pre/post shift off the clock policy and bonus pay scheme were imposed on other Hourly Employees.

86.     The Hourly Employees are similarly situated in the most relevant respects.

87.     Even if their precise job duties and locations might vary, these differences do not matter for the purpose of determining their entitlement to overtime wages at the required premium rate for all overtime hours worked.

88.     Therefore, the specific job titles or job locations of the Hourly Employees do not prevent class or collective treatment.

89.     Rather, Northern Star's pre/post shift off the clock policy and bonus pay scheme render Bybee and the other Hourly Employees similarly situated for the purpose of determining their right to overtime wages at the required rate for all overtime hours worked.

90.     Northern Star's records reflect the number of "on the clock" hours the Hourly Employees recorded worked each workweek.

Bybee v. Northern Star (Pogo) LLC
Complaint

91. Northern Star's records also show Northern Star paid the Hourly Employees non-discretionary bonuses it failed to include in their regular rates of pay.

92. The back wages owed to the Hourly Employees can therefore be calculated using the same formula applied to the same records.

93. Even if the issue of damages were somewhat individual in character, the damages can be calculated by reference to Northern Star's records, and there is no detraction from the common nucleus of liability facts.

94. Therefore, the issue of damages does not preclude class or collective treatment.

95. Bybee's experiences are therefore typical of the experiences of the other Hourly Employees.

96. Bybee has no interest contrary to, or in conflict with, the other Hourly Employees that would prevent class or collective treatment.

97. Bybee has an interest in obtaining the unpaid wages owed to the Hourly Employees under federal and Alaska law.

98. Bybee and his counsel will fairly and adequately protect the interests of the Hourly Employees.

99. Bybee retained counsel with significant experience in handling complex class and collective action litigation.

100. Absent this class and collective action, many Hourly Employees will not obtain redress for their injuries, and Northern Star will reap the unjust benefits of violating the FLSA and AWHA.

Bybee v. Northern Star (Pogo) LLC
Complaint

101.    Further, even if some of the Hourly Employees could afford individual litigation, it would be unduly burdensome to the judicial system.

102.    Indeed, the multiplicity of actions would create hardship to the Hourly Employees, the Court, and Northern Star.

103.    Conversely, concentrating the litigation in one forum will promote judicial economy and consistency, as well as parity among the Hourly Employees' claims.

104.    The questions of law and fact that are common to each Hourly Employee predominate over any questions affecting solely the individual members.

105.    Among the common questions of law and fact are:

    a.    Whether Northern Star imposed its pre/post shift off the clock policy on the Hourly Employees;

    b.    Whether Northern Star's pre/post shift off the clock policy deprived the Hourly Employees of overtime compensation;

    c.    Whether Northern Star paid the Hourly Employees non-discretionary bonuses;

    d.    Whether Northern Star engaged in a policy or practice of failing to include non-discretionary bonuses paid to the Hourly Employees in their regular rates of pay for the purpose of calculating overtime;

    e.    Whether Northern Star failed to pay the Hourly Employees overtime wages at the required premium rate—based on all remuneration—for all overtime hours worked;

Bybee v. Northern Star (Pogo) LLC
Complaint

f.     Whether Northern Star's decision not to pay the Hourly Employees overtime wages at the required rate—based on all remuneration—for all overtime hours worked was made in good faith; and

g.     Whether Northern Star's violations were willful?

106.    Bybee knows of no difficulty that will be encountered in the management of this litigation that would preclude its ability to go forward as a class and collective action.

107.    There are many similarly situated Hourly Employees who have been denied overtime pay at the required rate—based on all remuneration—for all overtime hours worked, in violation of the FLSA, who would benefit from the issuance of a court-supervised notice of this lawsuit and the opportunity to join it.

108.    The Hourly Employees are known to Northern Star, are readily identifiable, and can be located through Northern Star's business and personnel records.

## NORTHERN STAR'S VIOLATIONS WERE WILLFUL

109.    Northern Star knew it employed the Hourly Employees.

110.    Northern Star knew it was subject to the FLSA's overtime provisions.

111.    Northern Star knew Bybee and the other Hourly Employees were its non-exempt employees entitled to overtime pay.

112.    Northern Star knew the FLSA required it to pay non-exempt employees, including Bybee and the other Hourly Employees, overtime wages at rates of at least 1.5 times their regular rates of pay—based on all remuneration—for all hours worked after 40 in a workweek.

Bybee v. Northern Star (Pogo) LLC
Complaint

113. Northern Star knew Bybee and each Hourly Employee worked more than 40 hours in at least one workweek during the last 3 years because these employees were required to report their "on the clock" hours to Northern Star via its timekeeping system.

114. Northern Star knew it paid the Hourly Employees according to its pre/post shift off the clock policy.

115. Northern Star knew it had a duty to ensure the Hourly Employees were not performing work "off the clock" (without pay).

116. Northern Star knew it required the Hourly Employees to don and doff safety gear and protective clothing, "off the clock."

117. Northern Star controlled the Hourly Employees' work procedures.

118. Northern Star knew the Hourly Employees' mandatory "off the clock" work was a fundamental requirement of their jobs.

119. Northern Star knew the Hourly Employees' mandatory "off the clock" work was an integral and indispensable requirement of their jobs.

120. Northern Star knew the Hourly Employees routinely performed this daily, required "off the clock" work for its predominant benefit.

121. In other words, Northern Star knew the Hourly Employees performed compensable work (*e.g.*, donning/doffing their safety gear and protective clothing) "off the clock" and without compensation.

122. Northern Star knew it paid Bybee and the other Hourly Employees non-discretionary bonuses.

Bybee v. Northern Star (Pogo) LLC
Complaint

123.	Northern Star knew these non-discretionary bonuses were not included in Bybee's and the other Hourly Employees' regular rates of pay for overtime purposes.

124.	And Northern Star knew the FLSA required it to pay Bybee and the other Hourly Employees at least 1.5 times their regular rates of pay—based on all remuneration—for all hours worked in excess of 40 a workweek.

125.	Northern Star knew Bybee and the other Hourly Employees regularly worked in excess of 40 hours a workweek.

126.	Thus, Northern Star knew, should have known, or recklessly disregarded whether it failed to pay Bybee and the other Hourly Employees at least 1.5 times their regular rates of pay—based on all remuneration—for all the hours they worked in excess of 40 a workweek.

127.	Northern Star's failure to pay Bybee and the other Hourly Employees overtime at the required rate—based on all remuneration—for all overtime hours worked was neither reasonable, nor was this shared decision made in good faith.

128.	Northern Star knowingly, willfully, and/or in reckless disregard of the FLSA carried out its unlawful bonus pay scheme and pre/post shift off the clock policy that deprived Bybee and the other Hourly Employees of overtime wages at the required rate of pay—based on all remuneration—for all hours worked after 40 a workweek, in willful violation of the FLSA.

## COUNT I

### FAILURE TO PAY OVERTIME UNDER THE FLSA
### (FLSA COLLECTIVE)

Bybee v. Northern Star (Pogo) LLC
Complaint

129.     Bybee brings his FLSA claim as a collective action on behalf of himself and the other FLSA Collective Members pursuant to 29 U.S.C. § 216(b).

130.     Northern Star violated, and is violating, the FLSA by employing non-exempt employees, such as Bybee and the other FLSA Collective Members, in a covered enterprise for workweeks longer than 40 hours without paying such employees overtime wages at rates of at least 1.5 times their regular rates of pay—based on all remuneration—for the hours they worked in excess of 40 in a workweek.

131.     Northern Star's unlawful conduct harmed Bybee and the other FLSA Collective Members by depriving them of the overtime wages they are owed.

132.     Accordingly, Northern Star owes Bybee and the other FLSA Collective Members the difference between the wages actually paid and the overtime wages actually earned.

133.     Because Northern Star knew, or showed reckless disregard for whether its bonus pay scheme and pre/post shift off the clock policy violated the FLSA, Northern Star owes Bybee and the other FLSA Collective Members these wages for at least the past 3 years.

134.     Northern Star is also liable to Bybee and the other FLSA Collective Members for an amount equal to all their unpaid overtime wages as liquidated damages.

135.     Finally, Bybee and the other FLSA Collective Members are entitled to recover all reasonable attorneys' fees and costs incurred in this action.

## <u>COUNT II</u>

### FAILURE TO PAY OVERTIME UNDER THE AWHA
### (ALASKA CLASS)

Bybee v. Northern Star (Pogo) LLC
Complaint

136.     Bybee brings his AWHA claims as a class action on behalf of himself and the other Alaska Class Members pursuant to FED. R. CIV. P 23.

137.     At all relevant times, Northern Star was an "employer" within the meaning of the AWHA. *See* AS § 23.10.145.

138.     At all relevant times, Northern Star employed Bybee and the other Alaska Class Members as covered "employees" within the meaning of the AWHA. *See* AS § 23.10.145.

139.     The AWHA requires employers, like Northern Star, to pay employees, including Bybee and the other Alaska Class Members, overtime wages at rates of at least 1.5 times the employees' regular rates of pay—based on all renumeration—for all hours worked after 8 in a workday and 40 in a workweek. *See* AS § 23.10.060.

140.     Northern Star violated, and is violating, the AWHA by employing the Alaska Class Members in a covered enterprise for workdays longer than 8 hours and workweeks longer than 40 hours without paying such employees overtime wages at rates of at least 1.5 times their regular rates of pay—based on all renumeration—for the hours they worked after 8 in a workday and 40 in a workweek.

141.     Northern Star's unlawful conduct harmed Bybee and the other Alaska Class Members by depriving them of the overtime wages they are owed.

142.     Accordingly, Bybee and the Alaska Class Members are entitled to the difference between the wages actually paid and the overtime wages actually earned, plus an equal amount as liquidated damages, as well as attorney's fees and costs. *See* AS § 23.10.110.

## JURY DEMAND

143.     Bybee demands a trial by jury on all Counts.

Bybee v. Northern Star (Pogo) LLC
Complaint

## RELIEF SOUGHT

WHEREFORE, Bybee, individually and on behalf of the other Hourly Employees, seeks the following relief:

a. An Order designating this lawsuit as a collective action and authorizing notice to the FLSA Collective Members allowing them to join this action by filing a written notice of consent;

b. An Order designating this lawsuit as a class action pursuant to FED. R. CIV. P. 23;

c. An Order appointing Bybee and his counsel to represent the interests of the Hourly Employees;

d. An Order pursuant to the AWHA finding Northern Star liable for unpaid overtime wages due to Bybee and the Alaska Class Members, plus liquidated damages in amount equal to their unpaid wages;

e. An Order finding Northern Star liable to Bybee and the other Hourly Employees for unpaid overtime wages owed under the FLSA, plus liquidated damages in an amount equal to their unpaid wages;

f. Judgment awarding Bybee and the other Hourly Employees all unpaid wages, liquidated damages, statutory damages, and any other penalties available under the FLSA and/or AWHA;

g. An Order awarding attorneys' fees, costs, and expenses;

Bybee v. Northern Star (Pogo) LLC
Complaint

h. An Order awarding pre- and post-judgment interest at the highest applicable rates; and

i. Such other and further relief as may be necessary and appropriate.

DATED: October 1, 2025

Respectfully submitted,

Jack Garyth Poulson
Alaska Bar No. 8711104
**POULSON LAW LLC**
636 Harris Street
Juneau, Alaska 99801
Tel: (907) 586-6529
jack@poulson.law

Michael A. Josephson*
Andrew W. Dunlap*
**JOSEPHSON DUNLAP LLC**
11 Greenway Plaza, Suite 3050
Houston, Texas 77046
Phone: (713) 352-1100
Fax:     (713) 352-3300
mjosephson@mybackwages.com
adunlap@mybackwages.com

Richard J. (Rex) Burch*
**BRUCKNER BURCH PLLC**
11 Greenway Plaza, Suite 3025
Houston, Texas 77046
Phone: (713) 877-8788
Fax:     (713) 877-8065
rburch@brucknerburch.com

*Pro hac vice applications forthcoming*

**ATTORNEYS FOR BYBEE &
THE HOURLY EMPLOYEES**

Bybee v. Northern Star (Pogo) LLC
Complaint